**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

JS - 6

Case No.   **SA CV 23-00019-JFW**
8:20-bk-11795-TA                                                        Date: February 13, 2024

Title:   In Re: Byron York Priestley
Byron York Priestley -v- FCI Lender Services, Inc., et al.

---

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| **Courtroom Deputy** | **Court Reporter** |

| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):**   ORDER AFFIRMING BANKRUPTCY COURT'S DECEMBER 8, 2022 MEMORANDUM OF DECISION ON MOTION FOR JUDGMENT ON THE PLEADINGS, DECEMBER 21, 2022 ORDER RE: DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AS TO PLAINTIFF'S FIRST AMENDED COMPLAINT, AND DECEMBER 21, 2022 JUDGMENT OF DISMISSAL

On January 6, 2023, Appellant Byron York Priestly ("Priestley") filed an appeal from the United States Bankruptcy Court's December 8, 2022 Memorandum of Decision on Motion for Judgment on the Pleadings (Bankruptcy Court Docket No. 178), the December 21, 2022 Order Re: Defendants' Motion for Judgment on the Pleadings as to Plaintiff's First Amended Complaint (Bankruptcy Court Docket No. 184), and the December 21, 2022 Judgment of Dismissal (Bankruptcy Court Docket No. 185).

On August 28, 2023, Priestly filed his Opening Brief. On November 22, 2023, Appellees 20 Cap Fund I, LLC, FCI Lender Services, Inc., Lars E. Bell, and Corey O'Brien (collectively, "20 Cap") filed their Reply Brief. On January 5, 2024, Priestley filed a Reply Brief. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found this matter appropriate for submission on the papers without oral argument. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

## I.     Factual and Procedural Background

### A.     The Loan History

In August 2004, third party Dennis McGaughey ("McGaughey"), Priestley's stepfather, obtained a loan (the "Loan") that was secured by a second deed of trust against the property located at 22442 Rippling Brook, Lake Forest, California (the "Property"). In approximately August 2015, 20 Cap purchased the Loan. Although Priestley was never a party to the Loan, Priestley alleges that McGaughey transferred his interest in the Property to Priestley sometime in 2017.[1] Priestley has also alleged that he is the assignee of "all choses in action, rights, and claims that McGaughey held against [20 Cap] and is the successor to McGaughey of all claims asserted herein that were otherwise held by McGaughey."

On June 24, 2020, a Trustee's Sale was held as a result of the admitted – and decade-long – default on the Loan, and 20 Cap acquired the Property.

### B.     The State Court Action

On April 10, 2017, McGaughey filed an action in Orange County Superior Court ("OCSC") against 20 Cap and other defendants, entitled *Dennis T. McGaughey v. FCI Lender Services Inc., et al.*, OCSC Case No. 30-2017-00913685-CU-OR-CJC (the "State Court Action"). Although McGaughey amended his Complaint multiple times in the State Court Action, the basis of McGaughey's claim remained the same – challenging 20 Cap's ownership of the Loan. On August 6, 2018, McGaughey filed his Third Amended Complaint, which alleged causes of action for: (1) declaratory relief; (2) equitable estoppel; (3) fraud/concealment; (4) breach of oral agreement; (5) violations of California Civil Code §§ 2924(a)(6) and 2924.17(a)(b)(c); and (6) slander of title.

On October 31, 2018, after conducting a court trial on the first and fifth causes of action, the Honorable Thomas A. Delaney concluded that McGaughey did not have standing to pursue his first cause of action for declaratory relief which sought to preemptively challenge the then-pending non-judicial foreclosure of the Property. In addition, Judge Delaney concluded that 20 Cap was entitled to judgment on McGaughey's fifth cause of action for violations of California Civil Code §§ 2924(a)(6) and 2924.17(a)(b)(c) because "20 Cap purchased the [L]oan in August 2015, and received the note and allonge affixed thereto shortly thereafter, thereby having full rights to institute non-judicial foreclosure proceedings under Civil Code section 2924 *et seq.*" On March 5, 2019, Judge Delaney granted 20 Cap's Motion for Judgment on the Pleadings with respect to McGaughey's third cause of action for fraud/concealment and sixth cause of action for slander of title because those causes of action were dependent on whether 20 Cap owned the Loan and the court had already determined that it did.

On July 19, 2019, Judge Delaney granted 20 Cap's Motion for Judgment on the Pleadings

---

[1] Despite this alleged transfer, Priestley and McGaughey later and repeatedly testified under oath that Priestley had no interest in the Property – or any property – and that the Property was only owned by McGaughey.

with respect to McGaughey's second cause of action for equitable estoppel, and granted McGaughey leave to amend to add a claim for promissory estoppel only. On August 7, 2019, McGaughey filed a Fourth Amended Complaint, which amended the second cause of action to allege a claim for promissory estoppel instead of a claim for equitable estoppel and added Priestley as a party with respect to the fourth cause of action for breach of an oral contract.[2] On December 20, 2019, Judge Delaney sustained without leave to amend 20 Cap's demurrer to the Fourth Amended Complaint. On June 17, 2020, Judge Delaney entered judgment in favor of 20 Cap and against McGaughey and Priestley in the Judgment of Dismissal of Entire Case. In August 2020, McGaughey and Priestley appealed the Judgment of Dismissal of Entire Case. However, on June 1, 2021, the appeal was dismissed for McGaughey's and Priestley's failure to file their opening brief.

      **C.     The TILA Action**

On May 2, 2019, after Judge Delaney rejected McGaughey's challenges to 20 Cap's ownership of the Loan in the State Court Action, McGaughey and Priestley filed an action against 20 Cap and other defendants in the United States District Court for the Central District of California, entitled *Dennis T. McGaughey, et al., v. PNP Management Services, VII, LLC, et al.,* Case No. 19-826-AG (JDEx) (the "TILA Action"). In the TILA Action, McGaughey and Priestley alleged claims for violation of TILA, fraud, and violation of California Unfair Competition Law. As in the State Court Action, the claims in the TILA Action again challenged 20 Cap's ownership of the Loan. On January 23, 2020, the Honorable Andrew J. Guilford granted 20 Cap's motion to dismiss, and dismissed the TILA Action with respect to 20 Cap. Neither McGaughey nor Priestley appealed the dismissal of the TILA Action.

      **D.     Priestley's Bankruptcy and Related Adversary Proceeding**

On June 23, 2020, on the evening before the Trustee's sale of the Property and after the State Court Action and TILA Action had been dismissed, Priestley filed a Chapter 11 Bankruptcy Petition. On November 5, 2020, Priestley filed an adversary proceeding against 20 Cap and other defendants, entitled *Byron Priestley v. FCI Lender Services, Inc., d/b/a California TD Specialists, et al.,* Case No. 20-ap-01159-MW (the "Adversary Proceeding"). On November 20, 2021, Priestley filed a First Amended Complaint ("FAC") in the Adversary Proceeding, alleging claims for: (1) violation of the automatic stay; (2) injunctive relief; (3) declaratory relief; (4) quiet title; (5) wrongful foreclosure; (6) RICO; (7) violations of the Fair Debt Collection Practices Act ("FDCPA"); (8) violations of the Rosenthal Act; and (9) turnover pursuant to 11 U.S.C. § 544(e).

On July 28, 2022, the Bankruptcy Court issued a detailed tentative ruling in advance of the hearing on the parties' competing motions for judgment on the pleadings. On August 11, 2022, after oral argument, the Bankruptcy Court denied Priestley's motion for judgment on the pleadings and granted in part 20 Cap's Motion for Judgment on the Pleadings as to Plaintiff's First Amended

---

[2] Priestley was not initially a party to the State Court Action, and was only added as a plaintiff with respect to the fourth cause of action when the Fourth Amended Complaint was filed. Priestley had verified the earlier versions of the complaint on behalf of McGaughey and, as a result, was aware of the allegations made in each version of the complaint.

Complaint ("Motion for Judgment on the Pleadings"). Specifically, the Bankruptcy Court dismissed Priestley's second, third, fourth, sixth, seventh, eighth, and ninth claims, and dismissed those claims without leave to amend. With respect to the two remaining claims in the FAC – the first claim for violation of the automatic stay and the fifth claim for wrongful foreclosure – the Bankruptcy Court ordered the parties to file supplemental briefing "on the issue of collateral estoppel/res judicata and their application to the remaining causes of action."

On October 4, 2022, after the supplemental briefing was filed, the Bankruptcy Court issued a detailed tentative ruling, which included a thorough analysis of the collateral estoppel/res judicata issue, including a discussion of the primary rights doctrine. At the hearing on October 4, 2022, the Bankruptcy Court heard arguments on 20 Cap's Motion for Judgment on the Pleadings on the remaining first and fifth claims in Priestley's Adversary Proceeding as well as 20 Cap's motion for retroactive relief from the automatic stay in Priestley's main bankruptcy case. The Bankruptcy Court granted 20 Cap's motion for retroactive relief from the automatic stay, which mooted Priestley's first claim for violation of the automatic stay. At the conclusion of the hearing, the Bankruptcy Court ordered the parties to file supplemental briefing on the primary rights doctrine and the doctrine's application to the fifth claim for wrongful foreclosure, which was Priestley's only remaining claim.

After considering the supplemental briefing, the Bankruptcy Court issued its December 8, 2022 Memorandum of Decision on Motion for Judgment on the Pleadings and its December 21 2022 Order Re: Defendants' Motion for Judgment on the Pleadings as to Plaintiff's First Amended Complaint (collectively, "December 21, 2022 Order"). In the December 21, 2022 Order, the Bankruptcy Court granted 20 Cap's Motion for Judgment on the Pleadings with respect to Priestley's fifth claim for wrongful foreclosure, and dismissed that claim without leave to amend. In dismissing the wrongful foreclosure claim, the Bankruptcy Court concluded that "there can be no doubt that the question of 20 Cap's legitimate ownership fo the [L]oan" had been decided by Judge Delaney's "unequivocal finding in 20 Cap's favor" in the State Court Action. The Bankruptcy Court also concluded "[f]or thoroughness" that the TILA Action was also based on the same primary right as the State Court Action and that Judge Guildford has also rejected Priestley's challenges to 20 Cap's ownership of the Loan.

On December 21, 2022, the Bankruptcy Court entered its Judgment of Dismissal, which dismissed with prejudice Priestley's Adversary Proceeding, and deemed 20 Cap the prevailing party ("December 21, 2022 Judgment"). Priestly then appealed the Bankruptcy Court's December 21, 2022 Order (Bankruptcy Court Docket Nos. 178 and 184) and the Bankruptcy Court's December 21, 2022 Judgment of Dismissal (Bankruptcy Court Docket No. 185).

## II.    Issue on Appeal

The issue on appeal is whether the Bankruptcy Court erred in its December 21, 2022 Order and December 21, 2022 Judgment when it concluded that Priestley's fifth claim for wrongful foreclosure in the Adversary Proceeding was barred by the doctrine of res judicata.[3]

---

[3] According to Priestley, the issues on appeal are: (1) Whether the Bankruptcy Court erred in entering judgment against Priestley on all claims in the Adversary Proceeding; (2) Whether the

### III.     Legal Standard

The standard of review of bankruptcy court decisions by district courts is well-established, and uncontested by the parties. When reviewing decisions of a bankruptcy court, district courts apply standards of review applicable to the courts of appeals when reviewing district court decisions. *In re Baroff*, 105 F.3d 439, 441 (9th Cir.1997); *see also In re Fields*, 2010 WL 3341813, *2 (E.D. Cal. 2010) ("A district court's standard of review over a bankruptcy court's decision is identical to the standard used by circuit courts reviewing district court decisions.") (citation omitted).

On appeal, a district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Federal Rules of Bankruptcy Procedure 8013.  Generally, a district court reviews a bankruptcy court's factual findings "'under the clearly erroneous standard and its conclusions of law de novo.'" *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352, 1357 (9th Cir. 1986) (*quoting Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir. 1986)).  "Mixed questions of law and fact are reviewed de novo." *Beaupied v. Chang (In re Chang)*, 163 F.3d 1138, 1140 (9th Cir.1998).

In reviewing a Bankruptcy Court's decision to grant a motion for judgment on the pleadings, a district court reviews legal determinations de novo. *Parker v. County of Riverside*, 78 F.4th 1109 (9th Cir. 2023).  In addition, a district court reviews a Bankruptcy Court's decision to deny leave to amend under an abuse of discretion standard.  *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 949 (9th 2006).  In reviewing a court's denial of leave to amend, a "court's failure to consider the relevant factors and articulate why dismissal should be with prejudice instead of without prejudice may constitute an abuse of discretion." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003): *see also Klamath Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau,* 701 F.2d 1276, 1292-93 (9th Cir. 1983) (explaining that "where the record does not clearly dictate the district court's denial, we have been unwilling to affirm absent written findings," particularly where there is no clear showing that amendment would be futile); *see also Gravel Express, Inc. v. Meadow Valley Contractors, Inc*., 232 F.3d 894 (9th Cir. 2000) (unpublished) ("The lack of such written findings is not fatal; if the record clearly indicates the reasons for the denial, as is it did here, there is no abuse of discretion").

### IV.     Discussion

Priestley argues that the Bankruptcy Court erred in granting 20 Cap's Motion for Judgment on the Pleadings and entering the December 21 2022 Order and December 21, 2022 Judgment.  Specifically, Priestley argues that the Bankruptcy Court erred in finding that his fifth claim for wrongful foreclosure was barred by the doctrine of res judicata.  Priestley argues that the

---

doctrine of res judicata precludes a wrongful foreclosure claim that did not exist at the time the State Court Action was filed or resolved; and (3) Whether the doctrine of res judicata precludes a claim that 20 Cap was not the actual owner of the Loan when that issue was never actually litigated.

Bankruptcy Court erred in applying the doctrine of res judicata to a claim that was not actually litigated or resolved in the State Court Action.  Priestley also argues that even if the State Court Action did adjudicate the merits of the 20 Cap's ownership of the Loan, it could not be relied on for purposes of res judicata because there was evidence of extrinsic fraud.  In its Opposition, 20 Cap argues that the Bankruptcy Court's December 21, 2022 Order and December 21, 2022 Judgment should be affirmed.  Specifically, 20 Cap argues that the Bankruptcy Court correctly concluded that the issue of 20 Cap's ownership of the Loan was decided in 20 Cap's favor in the State Court Action and the TILA Action.  Therefore, 20 Cap argues that Priestley is precluded from relitigating those claims by the doctrine of res judicata.

### A.     The Bankruptcy Court's December 21, 2022 Order

Priestley's Adversary Proceeding was dismissed with prejudice after the Bankruptcy Court granted 20 Cap's Motion for Judgment on the Pleadings.  The Bankruptcy Court's decision to grant 20 Cap's Motion for Judgment on the Pleadings, and specifically its determination that Priestley's fifth claim for wrongful foreclosure was barred by the doctrine of res judicata, was only made after the Bankruptcy Court carefully and exhaustively considered all of the arguments raised by Priestley.  Indeed, the Bankruptcy Court did not issue its December 21, 2022 Order until after it had ordered multiple rounds of supplemental briefing and held multiple hearings on 20 Cap's Motion for Judgment on the Pleadings.  The Bankruptcy Court also issued two comprehensive and detailed tentative rulings – its July 28, 2022 Tentative Ruling and its October 4, 2022 Tentative Ruling that were incorporated by reference into the Bankruptcy Court's December 21, 2022 Order.

In the December 21, 2022 Order, the Bankruptcy Court dismissed the sole remaining claim in Priestley's FAC in the Adversary Proceeding – his fifth claim for wrongful foreclosure.  The Bankruptcy Court concluded that the primary issue in Priestley's wrongful foreclosure claim – whether 20 Cap owned the Loan – had already been decided in 20 Cap's favor by Judge Delaney in the State Court Action.  In reaching this conclusion, the Bankruptcy Court discussed in detail why it disagreed with Priestley's argument that Judge Delaney's decision in the State Court Action did not have a res judicata effect.  Specifically, the Bankruptcy Court concluded that:

> In the latest supplemental briefs, Plaintiff elaborates on a few points, which he believes rescues his remaining cause of action [for wrongful foreclosure] from *res judicata* despite the primary rights doctrine.  None are particularly convincing.
>
> Plaintiff strenuously contends that his primary right, the right to not be unjustly deprived of his property, was never adjudicated in state court because he lacked standing to so assert.  This court already addressed the standing argument in its discussion of *Dehorney v. Ocwen Loan Servicing, LLC*, 2020 U.S. Dist. LEXIS 28 249742 (C.D. Cal. Nov. 16, 2020) in the October 4 tentative ruling and still believes, following the reasoning in *Dehorney,* that the primary rights doctrine bars the final claim. In the supplemental brief, Plaintiff targets a section of Dehorney quoted by this court in the October 4 tentative ruling and attempts to draw a legal distinction.  In concluding that the plaintiff's action was barred by the primary rights doctrine, the *Dehorney* court concluded:
>
> > "Moreover, Plaintiffs standing problem was not solely one of timing.

>The Court of Appeal in the Original Action found that Plaintiff lacked standing to challenge the nonjudicial foreclosure for two separate reasons: (1) the foreclosure had not yet been completed (a timing issue); and (2) the alleged defects that formed the basis of the challenge would only render the assignment voidable (a permanent standing impediment).  Thus, the Court of Appeal actually decided the merits of a principal claim made in support of Plaintiffs wrongful foreclosure theory, finding that she could not pursue that claim (even post-foreclosure)." *Dehorney* at 18-19.

Plaintiff focuses on the language dealing with whether the assignment in *Dehorney* was voidable as opposed to void.  Plaintiff argues that, unlike *Dehorney*, no court has ever made a finding on whether the instruments in this case were, in fact, void.  Thus, Plaintiff argues, there has not been a decision on the merits by any court relating to this theory of recovery.

The problem with this assertion, as Defendants point out in their supplemental brief, is that Judge Delaney in the state court action appeared to rule in 20 Cap's favor finding that 20 Cap legitimately owned the loan on Plaintiff's home.  Defendants cite Judge Delaney's minute order from March 5, 2019, granting Defendants' Motion For Judgment on the Pleadings (*See* Defendants' RJN Ex. 9) where the court noted,

>"The third cause of action for fraud/concealment and the sixth cause of action for slander of title are based on whether 20 Cap owned the loan and, thus, has the authority to foreclose.  Although the Court's determination that Plaintiff lacked standing to pursue his first cause of action for declaratory relief did not address Defendants' ownership of the loan, Plaintiff's standing to pursue the fifth cause of action for violation of Civil Code sections 2924(a)(6) and 2924.17 is uncontested."  *Id* at p. 2. (emphasis added).

Judge Delaney's minute order continued,

>"In addressing the fifth cause of action, the Court found that the recorded documents at issue 'were not recorded in violation of Civil Code section 2924.17 or 2924.12(a), in the manner that Plaintiff contends, because 20 Cap purchased the loan in August 2015, and received the note and allonge affixed thereto shortly thereafter, thereby having full rights to institute non-judicial foreclosure proceedings under Civil Code section 2924 et seq.' RJN, Ex. 8, 5:19-24; 6:16-23. Thus, the Court had jurisdiction to consider the merits of Plaintiffs HBOR claims and to make findings regarding Defendants' ownership of the loan, which it did." Id.

To ensure that there were no doubts as to Judge Delaney's findings, the minute order makes clear, "In the Court's Order and Findings of Fact and Conclusions of Law, the Court found (1) that Plaintiff lacked standing to bring a

preemptive action prior to a non-judicial foreclosure and (2) that 20 Cap purchased the loan in August 205 [*sic*] and received the note and had full rights to institute non-judicial foreclosure.  Therefore, Defendants Motion for Judgment on the Pleading as to the third cause of action for fraudulent concealment and the sixth cause of action for slander of title is granted." *Id*.

In Plaintiff's recently filed supplemental briefing, Plaintiff argues that the above quoted sections from Judge Delaney's minute order should be wholly disregarded as *dicta* because, Plaintiff argues, Judge Delaney had already found that Plaintiff did not have proper standing.  The problem for Plaintiff is that just because a plaintiff may not have standing as to one cause of action, it does not mean the plaintiff has no standing to bring any causes of action; every cause of action is treated and analyzed separately for standing.  In fact, as quoted above, Judge Delaney's minute order explicitly found that Plaintiff *had* standing to bring the fifth, and for purposes of this case, likely decisive cause of action.  Thus, Judge Delaney had jurisdiction to decide, and did, whether 20 Cap legitimately owned the loan in question.  Judge Delaney's unequivocal finding in 20 Cap's favor is decisive because that is the question upon which the entire wrongful foreclosure cause of action rests.  There can be no doubt that the question of 20 Cap's legitimate ownership of the loan has been actually and necessarily decided, and not by *dicta*.  Our inquiry on the application of the primary rights doctrine and res judicata as it pertains to this adversary proceeding could rightly end here.

The Bankruptcy Court pointed out that Priestley had made the same arguments with respect to whether 20 Cap owned the loan in the TILA Action and that Judge Guilford had rejected his arguments:

For thoroughness, the court also notes that the district court litigation is quite obviously based on the same primary right as was the state court litigation.  Neither court ruled in Plaintiff's favor on any of his theories for defeating the alleged wrongful foreclosure.  For purposes of the application of the primary rights doctrine, it simply does not matter that the district court litigation centered around an alleged TILA violation as opposed to a void instrument theory for recovery.  At its center both theories derive from the same alleged harm (*i.e.*, the same primary right).  It is also worth pointing out again that the void instrument theory was put before Judge Guilford in an attempt to toll the statute of limitations.  (*See* Defendants' RJN Ex. 27 18, p. 3)  Judge Guilford evidently did not find the void instrument theory persuasive, and neither does this court. (*See* Defendants' RJN Ex. 19, p. 4)

The Bankruptcy Court concluded that Priestley had been given numerous opportunities in the Bankruptcy Court, the State Court Action, and the TILA Action to demonstrate the merits of his claims and that he had failed to do so:

In sum, this litigation must come to an end.  The various courts have indulged Plaintiff for several years and in that time Plaintiff has not persuaded any court of the righteousness of his cause.  As this court observed in the October 4 tentative ruling, the primary rights doctrine appears to have been created to address situations

exactly like this one. There is no doubt that Plaintiff, if allowed, could come up with even more creative theories for recovery and draw out the litigation indefinitely. This court has been particularly indulgent toward Plaintiff and has given every reasonable opportunity to make his case. Unfortunately, it seems he cannot. Thus, judgment on the pleadings in Defendants favor on the final cause of action for wrongful foreclosure seems warranted.

### B.     The Bankruptcy Court's October 4, 2022 Tentative Ruling

In the Bankruptcy Court's October 4, 2022 Tentative Ruling, which was incorporated by reference into the December 21, 2022 Order, the Bankruptcy Court discussed the doctrine of res judicata and the primary rights doctrine and explained in depth how they applied to Priestley's fifth claim for wrongful foreclosure in the Adversary Proceeding. Specifically, with respect to the primary rights doctrine, the Bankruptcy Court concluded that:

> The 'primary rights' doctrine seems to govern here, and appears to have been adopted for cases just like this. As articulated by the California Supreme Court in *Crowley v. Katleman* 8 Cal. 4th 666 (1994):
>
> > "The primary right theory is a theory of code pleading that has long been followed in California. It provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action." *Id*. at 681 - 82 (internal citations omitted)
>
> The *Crowley* court explained further:
>
> > "As far as its content is concerned, the primary right is simply the plaintiffs right to be free from the particular injury suffered. It must therefore be distinguished from the legal theory on which liability for that injury is premised: Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. *Id*. (internal citations and quotations omitted)."
>
> Perhaps most appropriate to the present case, the *Crowley* court observed:
>
> > "[The primary rights theory] is invoked most often when a plaintiff attempts to divide a primary right and enforce it in two suits . . . [I]f the first suit has terminated in a judgment on the merits adverse to the plaintiff, the defendant in the second suit may set up that judgment as a bar under the principles of res judicata . . . [N]umerous cases hold that when there is only one primary right an adverse judgment in the first suit is a bar even though the second suit is based on a different theory or seeks a different remedy." *Id*. at 682 (internal citations omitted).

The Bankruptcy Court also explained that the primary rights doctrine is recognized by the Ninth Circuit and concluded that Priestley had failed to make any persuasive argument as to why the primary rights doctrine and the doctrine of res judicata should not bar his fifth claim for wrongful foreclosure:

> Moreover, the primary rights doctrine is recognized and applied in the Ninth Circuit as well. *See Manuf. Home Com. v. City of San Jose*, 420 F.3d 1022, 1032 (9th Cir. 2005) ("Different theories of recovery are not separate primary rights"). *See also Reddi v. Hughes & Hughes LLP* 2015 U.S. Dist. LEXIS 192437, at *19 (C.D. Cal. 2015) ("Under the primary rights theory, '[t]here is an identity of claims if the two proceedings are based on the same primary right or injury'"). But the case of *Dehorney v. Ocwen Loan Servicing, LLC,* 2020 U.S. Dist. LEXIS 249742 (C.D. Cal. Nov. 16, 2020) from our own Central District is particularly persuasive because of its similar facts and theories for recovery. Like this case, the [p]laintiff in *Dehorney* argued that the foreclosing bank did not hold good title because the assignment was fraudulently obtained. *Id.* at 15. [the p]laintiff had made similar allegations in a prior action. *Id.* The *Dehorney* court made the following observations in that case, that could, and likely should, apply as well to this case:
>
>> "At their core, these allegations involve the same claimed injury (i.e., loss of the Property) arising out of the same purported wrongdoing (i.e., unlawful foreclosure). In terms of res judicata, '[t]he primary right was the right not to be wrongfully deprived of [the Property]; and the corresponding duty was the duty not to wrongfully deprive a person of [the Property]." *Id*. at 16. (internal citations omitted).
>
> The [p]laintiff in *Dehorney* argued that under California law, she could not bring a wrongful foreclosure action prior to an actual foreclosure, and that precluded application of res judicata. *Id.* at 16-18. The court notes that, like in *Dehorney*, much of the supplemental brief focuses particularly on the state court's finding that Debtor (and/or his predecessor in interest/ privy, McGaughey) lacked standing to bring a wrongful foreclosure action until there was an actual foreclosure. In dispensing with that argument, the *Dehorney* court persuasively explained,
>
>> "Nor does it matter, for purposes of res judicata, that Plaintiff lacked standing to assert the claim when she elected to file suit. Plaintiffs asserted primary right-the right not to be wrongfully deprived of the Property-implicates the same primary right as those decided in the Original Action, whether Plaintiffs wrongful foreclosure action was brought pre-foreclosure or post-foreclosure. California law does not appear to recognize a timing exception to the primary rights theory." *Id.* at 18.
>
> The *Dehorney* court continued,
>
>> "Moreover, Plaintiffs standing problem was not solely one of timing. The Court of Appeal in the Original Action found that Plaintiff lacked

standing to challenge the nonjudicial foreclosure for two separate reasons: (1) the foreclosure had not yet been completed (a timing issue); and (2) the alleged defects that formed the basis of the challenge would only render the assignment voidable (a permanent standing impediment). Thus, the Court of Appeal actually decided the merits of a principal claim made in support of Plaintiffs wrongful foreclosure theory, finding that she could not pursue that claim (even post-foreclosure)." *Id*. at 18-19.

In addition, the Bankruptcy Court explained how it had reached its conclusion that the doctrine of res judicata applied to Priestley's wrongful foreclosure claim notwithstanding its earlier conclusion in its July 28, 2022 Tentative Ruling that it did not apply:

Here, in the court's view, the primary rights theory finds purchase in much the same manner as it did in *Dehorney*. As 20 Cap points out, the primary right at stake throughout the litigation has been the Debtor's right to not be unjustly deprived his property. Debtor's current theory, the void instrument theory, is not even novel to this litigation. Debtor's predecessor in interest/privy, McGaughey, appears to have advanced a version of the void instrument theory in the state court litigation back in 2017. *See e.g.*, Defendant's Request For Judicial Notice, Ex. 5 "Plaintiffs Trial Brief" pp. 17-19. The court notes that in the Defendant's motion for judgment on the pleadings, the court held that res judicata likely did not apply to the state court litigation. However, on subsequent review, and in light of the augmented discussion of the "primary rights" doctrine, the court is inclined to find that the arguments set forth in the adversary proceeding are likely subject to res judicata and/or collateral estoppel. There is little question that debtor was in privity with McGaughey for at least two reasons: 1. Debtor is the step son and 2. Debtor has apparently been in residence, and received the deed unrecorded in June of 2017 but only recorded it on eve of the bankruptcy. Collateral estoppel binds not only the parties in the earlier litigation but their privies as well. *Younan v. Caruso*, 51 Cal. App.4th 401, 406 - 07 (1996).

As to the federal court litigation, Debtor makes much of the fact that District Judge Guilford never reached the merits of the void instrument theory because Judge Guilford dismissed Debtor's case by applying the applicable statute of limitations. However, Debtor could have asserted the void instrument theory more urgently before Judge Guilford. The fact that Debtor's theory of relief centered around alleged TILA violations was a strategic choice, and it apparently did not pay off. As 20 Cap points out, a dismissal with prejudice based on applicable statute of limitations can be given preclusive effect as long as the result is not unfair. *See Classic Auto Refinishing, Inc. v. Marino (In re Marino),* 181 F.3d 1142, 1144-45 (9th Cir. 1999). Thus, the court is obliged to examine whether giving preclusive effect to the prior federal court litigation would be unfairly prejudicial to Debtor. The court suggests that it would not be unfair because, under the primary rights doctrine, the void instruments theory could have (and should have) been raised earlier, and in fact was, though perhaps not as strenuously or as developed as it is now. Specifically, the void instruments theory was put before Judge Guilford in Debtor's first amended

complaint, but was not found persuasive enough to overcome the statute of limitations problem.  *See* Defendant's Request For Judicial Notice, Ex. 19 "First Amended Complaint" p. 9 under the heading "Concealed Facts" ("The truth is, 20 CAP never actually received the loans from the true title holder as governed by 12 CFR regulations, as they were fraudulently and illegally transferred to 20 CAP *through void instruments*.") emphasis added.

In sum, the court is persuaded that Debtor has been afforded ample opportunity to advance his theories for relief in other arenas for the past several years.  The court comes to this conclusion in large measure because of the primary rights doctrine, which contemplates a situation where, as here, a party seeking relief attempts to obtain that relief by a seemingly endless parade of new theories.  Stated differently, this doctrine's purpose is to prevent a party from perpetually moving the goal posts and subjecting both the opponent and the court to interminable (and likely futile) litigation.  The court is not persuaded that application of the primary rights doctrine as the basis for finding Debtor's theories barred by res judicata works any unfair prejudice upon him.

### C.    The Bankruptcy Court Did Not Err in Its December 21, 2022 Order and December 21, 2022 Judgment

Having considered all of the arguments made by the parties, and having carefully reviewed the record in the Adversary Proceeding, the Court concludes for the reasons discussed below that the Bankruptcy Court did not err in its December 21, 2022 Order or its December 21, 2022 Judgment, and as a result, the December 21, 2022 Order and December 21, 2022 Judgment will be affirmed.

#### 1.    The Doctrine of Res Judicata

The doctrine of res judicata, or claim preclusion, prevents a plaintiff from relitigating claims that were fully and finally resolved on the merits in a prior action.  *In Commissioner v. Sunnen*, 333 U.S. 591 (1948), the Supreme Court stated the "general rule of res judicata":

The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and the privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." [citation omitted]. The judgment puts an end to the cause of action which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating judgment.

The doctrine of res judicata applies when two separate cases share: (1) an identity of claims; (2) an identity or privity between parties in both cases; and (3) there is a final judgment on the merits in the first case.  *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002).

### 2. The Court Concludes That the Bankruptcy Court Did Not Err in Concluding That the Doctrine of Res Judicata Barred Priestley's Wrongful Foreclosure Claim

In this appeal, Priestley erroneously argues that the allegations in his wrongful foreclosure claim that 20 Cap did not own the Loan on the Property have never been adjudicated. However, as 20 Cap argues, and as the Bankruptcy Court correctly concluded in its December 21, 2022 Order, the issue of 20 Cap's ownership of the Loan has been repeatedly litigated and decided against Priestley, and such repeated litigation – and Priestley's clear determination to continue litigating the issue until he receives a favorable decision – is precisely why the doctrine of res judicata exists. Accordingly, for the reasons discussed below, the Court concludes that the Bankruptcy Court did not err in its December 21, 2022 Order when it concluded that Priestley's fifth claim for wrongful foreclosure was barred by the doctrine of res judicata.

#### a. An Identity of Claims

With respect to the first element, the doctrine of res judicata bars the claims actually raised as well as any claims "upon any ground whatever" that might have been raised. In applying this principle under federal law, the Ninth Circuit has concluded that the doctrine of res judicata bars a party from relitigating any claims arising out of the "same transactional nucleus of facts" as litigated in a prior matter. *Int'l Union v. Karr*, 994 F. 2d 1426, 1430 (9th Cir. 1993). Therefore, switching legal theories does not create a new cause of action sufficient to avoid the bar of res judicata. *Boateng v. Interamerican Univ., Inc.*, 210 F.3d 56, 62, *cert. denied*, 531 U.S. 904 (1st Cir. 2000). When applying this principle under California law, an identity of claims exists if they derive from the same "primary right." *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 797-98 (2010). As the California Supreme Court has explained, a primary right is "the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." *Id*. at 798. As a result, "[t]he critical focus of primary rights analysis 'is the harm suffered.'" *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) (citation omitted). The addition of new supporting facts, such as the inclusion of new legal theories to redress the same harm, does not alter the primary right at stake. *Id.*

In addition, courts have concluded that successive claims challenging the propriety of a lender's foreclosure implicate the same primary right under California law. *See Gillies v. JPMorgan Chase Bank, N.A.*, 7 Cal. App. 5th 907, 910 (2017) (holding that multiple lawsuits asserting "similar allegations of claimed wrongful foreclosure procedures and [bank's] standing to foreclose" are based on the same primary right). Federal courts have relied on this principle in concluding that a borrower is precluded under the primary rights theory from bringing multiple lawsuits to challenge the right of the lender (or its assignee(s)) to foreclose on the property used to secure the loan. As one court stated in defining the primary right:

> [T]he primary right for which Plaintiff seeks redress is her right to the foreclosed property. The harm for which Plaintiff sought relief in state court is the same harm for which she now seeks to hold Defendants liable – the allegedly wrongful foreclosure of her property. The actions in state court and this Court concern the same property, same deeds, and same foreclosure sale. Because Plaintiff has already filed an

action challenging Defendants' authority to foreclose, she may not file another
seeking to challenge the foreclosure on different grounds.

*Lomeli v. JPMorgan Chase Bank, N.A.*, 2015 WL 12746210, at *6 (C.D. Cal. Oct. 5, 2015); *see also Harold v. Wells Fargo Bank, N.A.,* 2020 WL 3867203, at *4 (N.D. Cal. May 29, 2020) (defining the primary right as the right against unlawful foreclosure); *Worthy v. Nationstar Mortg., LLC*, 2018 WL 1942405, at *5 (C.D. Cal. Mar. 2, 2018) (noting that "[m]any District Courts also have held that the same primary right is involved in a subsequent suit even if it involves allegations regarding foreclosure documents that had not been generated when the earlier matter was litigated.  The premise of these rulings is that the later documents and associated claims are derived from the claims of invalidity advanced in the earlier action" and holding that "[t]hat the same primary right is involved in both actions is confirmed because Plaintiffs seek the same relief in each of them -- a judicial determination that Plaintiffs have an exclusive ownership interest in the Corona Property"); *Miller v. Wholesale Am. Mortg., Inc.*, 2018 WL 306714, at *5 (N.D. Cal. Jan. 5, 2018) ("The primary right Ms. Miller asserts in this litigation is the same as the right she asserted in her prior litigation: her right to the Subject Property.  The alleged wrong she claims here is the same as the one she claimed there: that the defendants seek to foreclose on the Subject Property without (so Ms. Miller claims) having a right to do so").

In this case, as the Bankruptcy Court correctly concluded, it is clear that Priestley was attempting to re-litigate the same "primary right" in his wrongful foreclosure claim in the Adversary Proceeding that had previously been litigated and dismissed in the State Court Action (and the TILA Action) – specifically, whether 20 Cap owned the Loan on the Property.  Priestley argues that because Judge Delaney concluded in the State Court Action that McGaughey did not have standing to pursue his first cause of action for declaratory relief (where McGaughey was seeking to preemptively challenge the then-pending non-judicial foreclosure of the Property), the issue of 20 Cap's ownership of the Loan has never been adjudicated.  However, as the Bankruptcy Court explained in detail "Judge Delaney's minute order explicitly found that Plaintiff *had* standing to bring the fifth [cause of action for violations of California Civil Code §§ 2924(a)(6) and 2924.17(a)(b)(c)]" and, as a result, "Judge Delaney had jurisdiction to decide, and did, whether 20 Cap legitimately owned the loan in question.  Judge Delaney's unequivocal finding in 20 Cap's favor is decisive because that is the question upon which the entire wrongful foreclosure cause of action [in the Adversary Proceeding] rests.  There can be no doubt that the question of 20 Cap's legitimate ownership of the loan has been actually and necessarily decided, and not by *dicta*."

### b. Identity or Privity Between Parties

With respect to the second element, "[p]rivity between parties exists when a party is 'so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.'"  *Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1142 n.3 (*quoting United States v. Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997)).

In this case, as the Bankruptcy Court correctly concluded, the privity requirement is easily

satisfied.[4]  McGaughey transferred his interest in the Property to Priestley sometime in 2017.  In addition, Priestley is the assignee of "all choses in action, rights, and claims that McGaughey held against [20 Cap]" and admits that he "is the successor to McGaughey of all claims asserted herein that were otherwise held by McGaughey."  *See, e.g., Headwaters Inc. v. U.S. Forest Service*, 399 F.3d 1047, 1053 (9th Cir. 2005) (holding that privity exists where "two parties have identical or transferred rights with respect to a particular legal interest"); *Sw. Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977) ("Federal courts have deemed several types of relationships 'sufficiently close' to justify preclusion.  First, a non-party who has succeeded to a party's interest in property is bound by any prior judgments against the party").

### c.    A Final Judgment

With respect to the third element, the doctrine res judicata applies only to issues which have been determined by a judgment that is both final and on the merits.  *Grable v. Citizens Nat. Trust & Sav. Bank of Riverside*, 164 Cal. App. 2d 710, 331 P.2d 103, 106 (1958).  "Under California law, 'for purposes of applying the doctrine of res judicata . . . a dismissal with prejudice is the equivalent of a final judgment on the merits.'"  *Marquez v. U.S. Bank, N.A.*, 2016 WL 2885857 (C.D. Cal. May 16, 2016) (*quoting Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 793 (2010)).  However, a judgment from a California court is not considered final while there is time to appeal or while an appeal is pending, *People v. Mitchell Bros. Santa Ana Theater*, 101 Cal. App. 3d 296 (1980).

In this case, Judge Delaney dismissed the State Court Action with prejudice, which is equivalent to a judgment on the merits.  *See, e.g., Marquez*, 2016 WL 2885857.  In addition, despite Priestley's argument to the contrary, the fact that McGaughey and Priestley appealed Judge Delaney's dismissal of the State Court Action does not prevent the dismissal from having a res judicata effect in the Adversary Proceeding.  Judge Delaney's dismissal became "final" once McGaughey's and Priestley's appeal of the State Court Action was dismissed on June 1, 2021.  *See e.g., Legg v. Mutual Ben. Health and Acc. Ass'n*, 184 Cal. App. 2d 482 (1960).  The Bankruptcy Court did not dismiss Priestley's wrongful foreclosure claim in the Adversary Proceeding on res judicata grounds until December 21, 2022 – well after the Judge Delaney's dismissal of the State Court Action became final on June 1, 2021.  *See, e.g., Johnson v. Altamirano*, 418 F.Supp. 3d 530 (N.D. Cal. 2019) (declining to dismiss the plaintiff's claim for breach of fiduciary duty as barred by the doctrine of res judicata because the appeal of the state court judgment was still pending, but denying the motion to dismiss without prejudice to the defendants raising the res judicata issue "at a later stage in the proceedings once the state court judgment has become final"); *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) (holding that an earlier state court judgment could not have a preclusive effect where the federal district court reached the merits and entered judgment before the state court appeals were exhausted).

## V.    Conclusion

---

[4]  Although Priestley was eventually added as a party in the State Court Action, he was not a party at the time the Judge Delaney concluded that 20 Cap owned the Loan.  However, because there is privity between McGaughey and Priestley, the timing of Priestley being added as party to the State Court Action is irrelevant.

For all the foregoing reasons, and having considered all of Priestley's arguments on appeal, the Bankruptcy Court's December 21, 2022 Order and December 21, 2022 Judgment are **AFFIRMED**, and this appeal is **DISMISSED with prejudice**.

IT IS SO ORDERED.